## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **NEW ORLEANS & GULF COAST** | * | **CIVIL ACTION NO.** |
| **RAILWAY COMPANY** | * | |
| **Plaintiff** | * | |
| | * | |
| **Versus** | * | **SECTION** |
| | * | |
| **AMERICAN MIDSTREAM** | * | |
| **(LOUISIANA INTRASTATE), L.L.C.** | * | |
| **Defendant** | * | **MAGISTRATE** |
| | * | |

************************************

## COMPLAINT IN TRESPASS,

## UNAUTHORIZED USE OF IMMOVABLE PROPERTY,

## AND DAMAGES

**New Orleans & Gulf Coast Railway Company**, the Plaintiff herein, is represented by undersigned attorneys and brings this complaint in trespass, unauthorized use of immovable property, and damages averring:

## Jurisdiction

1.     This suit is an action in which this federal district court has jurisdiction under 28 U.S.C. Sec. 1332.

## Diversity of Citizenship

2.     The Plaintiff, New Orleans & Gulf Coast Railway Company (hereinafter referred to as "Plaintiff") is incorporated in the state of Delaware and has its principal place of business

in Louisiana.

3.      The Defendant, American Midstream (Louisiana Intrastate), L.L.C. is a limited liability company which is a solely owned subsidiary of American Midstream Partners, LP.   Both American Midstream (Louisiana Intrastate), L.L.C. and  American Midstream Partners, LP have their respective principal place of business in Colorado.

## Amount In Controversy

4.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## Venue

5.      Venue is proper in this federal district court under 28 U.S.C.A. Sect 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Further, all of the immovable property which is the subject of this action is situated within this judicial district in Plaquemines Parish, Louisiana.

## Parties

6.      a.      New Orleans & Gulf Coast Railway Company is the Plaintiff in this complaint.

        b.      American Midstream (Louisiana Intrastate), L.L.C. is made Defendant in this complaint.

## Statement of the Claim

**The Plaintiff**:

7.      a.      Plaintiff is the owner of a former Union Pacific Railroad railway branch line and the immovable property upon which it was constructed, located outside of the city of New Orleans.

Page 2 of  17

b.      Plaintiff's railway line is a 32 mile long railway that interchanges with the Union Pacific Railroad in Westwego, Louisiana traversing through Jefferson Parish, Louisiana; Orleans Parish, Louisiana; and Plaquemines Parish, Louisiana.

c.      Plaintiff's railway serves over twenty switching and industrial customers and is the only railroad operating east of Avondale, Louisiana on the west bank of the Mississippi River.

d.      Predominate shipments include a variety of food products, oils, grains, petroleum products, chemicals and steel products.

e.      Particular to Plaquemines Parish, Louisiana, Plaintiff's railway is located from the Plaquemines Parish, Louisiana border with Jefferson Parish, Louisiana; traversing through Plaquemines Parish, Louisiana along side of Highway 23; continuing across the Intracoastal Canal; then continuing in a southerly direction through Belle Chase, Louisiana; then continuing through Oak Point, Louisiana; then continuing through Alliance, Louisiana; and then continuing to the end of the railway in Myrtle Grove, Louisiana.

f.      Plaintiff and its predecessors in interest have owned and maintained this railway, its appurtenances and the immovable property upon which the railway and its appurtenances are constructed and operated for more than 100 years.

g.      A copy of the location of Plaintiff's railway is made part hereof as Exhibit P-1.

**The Defendant**:

8.  a.  Defendant is a limited liability company having its principal business office located at 1400 16th Street, Suite 310, Denver, Colorado.

    b.  Defendant is the surviving entity of a merger with Creole Gas Pipeline Corporation.

    c.  Defendant was formerly known as Enbridge Pipelines (Louisiana Intrastate) Inc., having undergone a name change on November 10, 2009.

    d.  It was when Defendant was known as Enbridge Pipelines (Louisiana Intrastate) Inc. that Defendant merged with Creole Gas Pipeline Corporation in 2002.

    e.  Among the results of this merger was that Defendant succeeded to the ownership of a six (6") inch natural gas pipeline that was constructed *circa* 1999 by Creole Gas Pipeline Corporation upon and within Plaintiff's immovable property in Plaquemines Parish, Louisiana, as well as other obligations of Creole Gas Pipeline Corporation.

    f.  This six (6") inch natural gas pipeline is hereinafter referred to as the "PIPELINE."

**Allegations of Fact**:

9.  Since construction of its PIPELINE *circa* 1999 and proceeding through December 6, 2014, Defendant and its predecessor in interest (Creole Gas Pipeline Corporation) operated and maintained the PIPELINE with Plaintiff's consent and authorization pursuant to a Longitudinal Pipeline Encroachment Agreement dated December 6, 1999.

10. This Longitudinal Pipeline Encroachment Agreement expired on its own terms on December 6, 2014.

11.     Since December 6, 2014, Defendant continues to operate and continues to maintain its PIPELINE on Plaintiff's immovable property without Plaintiff's consent and authorization.

12.     Made part hereof as Exhibit P-2 and Exhibit P-3 are two pages of a plat illustrating the route of Plaintiff's railway and the alignment of Defendant's PIPELINE in relation thereto.

13.     Exhibit P-2, beginning at the notation "1 - BEGIN PIPELINE" (*at Milepost 18.42*), illustrates the placement of Plaintiff's railway and Defendant's subsequently constructed the PIPELINE at a point where the PIPELINE begins.

14.     Proceeding in a northerly direction (up river), Defendant's PIPELINE is located adjacent to Plaintiff's railway and within Plaintiff's immovable property to the notation "2 - PIPELINE LEAVES RIGHT OF WAY" (*at Milepost 16.65*).

15.     At that point, Defendant's PIPELINE traverses away from Plaintiff's railway and exits Plaintiff's immovable property.

16.     Exhibit P-3, beginning at the notation "3 - PIPELINE REENTERS ROW" (*at Milepost 15.76*), illustrates where Defendant's PIPELINE re-enters Plaintiff's immovable property and again is located adjacent to Plaintiff's railway.

17.     Continuing to proceed in a northerly direction (up river), Defendant's PIPELINE is located adjacent to Plaintiff's railway and within Plaintiff's immovable property to the notation "4 - END OF PIPELINE" (*at Milepost 11.90*).

18.     Made part hereof as Exhibit P-4 is a cross section illustrating Plaintiff's railway in relation to Defendant's PIPELINE.

19.    The distance from "1 - BEGIN PIPELINE" (*Milepost 18.42*) to "2 - PIPELINE LEAVES RIGHT OF WAY" (*Milepost 16.65*) is 1.77 miles.  The distance from "3 - PIPELINE REENTERS ROW" (*Milepost 15.76*) to "4 - END OF PIPELINE" (*Milepost 11.90*) is 3.86 miles.

20.    Plaintiff is the owner of this 5.63 miles of immovable property having a width of no less than fifty (50') feet measured from the center of the railway.  For this 5.63 miles, Defendant's PIPELINE is located on Plaintiff's immovable property, varying in location from eighteen (18') feet to twenty-one (21') feet from the center of Plaintiff's railway.  Defendant's PIPELINE is located and is maintained and operated within this 5.63 miles of Plaintiff's immovable property without Plaintiff's consent and authorization.

21.    Among other immovable property, Plaintiff acquired the above referenced 5.63 miles of immovable property from New Orleans Lower Coast Railroad, Inc. (a predecessor in interest of the 1st degree to Plaintiff) in an act dated April 23, 1999 and filed for public record in the Plaquemines Parish Clerk of Court's office in Conveyance Office Book 948, folio 797, Instrument No. 99-19662 on April 30, 1999.

22.    Prior to this acquisition, New Orleans Lower Coast Railroad, Inc. (a predecessor in interest of the 1st degree to Plaintiff) acquired this property from Missouri Pacific Railroad Company (a predecessor in interest of the 2nd degree to Plaintiff) for a price of Three Million ($3,000,000.00) Dollars and no/100 cents in an act dated March 12, 1991.

23.    Other acts by which Plaintiff, through its predecessors in interest, acquired the above referenced 5.63 miles of immovable property include, but are not limited to the following:

a.      Transfer of property by Charles Foster in an act recorded March 12, 1890 and filed for public record in Conveyance Office Book (hereafter "COB") 28, folio 536.

b.      Transfer of property by Andrew Jackson in an act dated September 21, 1889 and filed for public record in COB 28, folio 539.

c.      Transfer of property by R. Beauregard, et al. in an act dated February 5, 1890 and filed for public record in COB 28, folio 572.

d.      Transfer of property by means of *process verbal* in the United States District Court for the Eastern District of Louisiana in matter no. 15,492 on November 29, 1916.

e.      Transfer of property by George A. Hero and the New City Company, Inc. in an act dated October 16, 1928 and filed for public record in COB 66, folio 418.

f.      Transfer of property by G. F. Bayhi in an act filed for public record in COB 68, folio 272 on November 2, 1929.

g.      Transfer of property by Mrs. Ernest Barrios in an act filed for public record in COB 68, folio 273 on November 2, 1929.

h.      Transfer of property by Mrs. Nolice Barrois in an act filed for public record in COB 68, folio 274 on November 2, 1929.

i.      Transfer of property by Mrs. J. O. Barrios in an act filed for public record in COB 68, folio 275 on November 2, 1929.

j.      Transfer of property by R. Fields and M. Fields, heirs of E. and W. Fields, in an act filed for public record in COB 68, folio 276 on November 2, 1929.

k.     Transfer of property by Emile J. Mothe, Sr. in an act filed for public record in COB 68, folio 272 on November 2, 1929.

l.     Transfer of property by H. W. Illenberger, et al in an act filed for public record in COB 68, folio 278 on November 2, 1929.

m.     Transfer of property by Joe Dobard in an act filed for public record in COB 68, folio 279 on November 2, 1929.

n.     Transfer of property by Maria Branch, Allen Branch and Vine Branch, heirs of Albert Branch, Sr., in an act filed for public record in COB 68, folio 28 on November 2, 1929.

o.     Transfer of property by Mrs. John Halceron (widow) in an act filed for public record in COB 68, folio 281 on November 2, 1929.

p.     Transfer of property by Thomas B. Knight in an act filed for public record in COB 68, folio 282 on November 2, 1929.

q.     Transfer of property by Mrs. John Hebert, nee Lydia Barrios in an act dated November 14, 1929 and filed for public record in COB 70, folio 84 on September 12, 1930.

r.     Transfer of property in an act executed on November 2, 1929 and filed for public record in COB 70, folio 85 on September 12, 1930.

s.     Transfer by Joseph Dobard of a right-of-way in an act filed for public record in COB 110, folio 447 and dated May 5, 1943.

t.      Transfer by Mrs. Nolise Barrios (heirs) of a right-of-way in an act filed for public record in COB 110, folio 448 and dated May 4, 1943.

u.      Transfer by Ernest Barrios (heirs) of a right-of-way in an act filed for public record in COB 110, folio 449 and dated May 4, 1943.

v.      Transfer by Mrs. John E. Barrios of a right-of-way in an act filed for public record in COB 110, folio 450 and dated May 4, 1943.

w.      Transfer by Mrs. Gus F. Bayhi (estate) of a right-of-way in an act filed for public record in COB 110, folio 451 and dated May 4, 1943.

x.      Transfer by Armond Stewart of a right-of-way in an act filed for public record in COB 110, folio 452 and dated May 4, 1943.

y.      Transfer by Claude E. Bayhi of a right-of-way in an act filed for public record in COB 110, folio 453 and dated May 4, 1943.

z.      Transfer by Rose Fields of a right-of-way in an act filed for public record in COB 110, folio 454 and dated May 4, 1943.

aa.     Transfer by Mary Fields of a right-of-way in an act filed for public record in COB 110, folio 455 and dated May 4, 1943.

bb.     Transfer by Mrs. Lydia Barrios Herbert of a right-of-way in an act filed for public record in COB 110, folio 456 and dated May 4, 1943.

cc.     Transfer by H. W. Illenberger, Sr. of a right-of-way in an act filed for public record in COB 110, folio 457 and dated May 4, 1943.

dd.   Transfer by Mrs. Irma Rita Bayhi Kennair of a right-of-way in an act filed for public record in COB 110, folio 458 and dated May 4, 1943.

ee.   Transfer by Harry Bodenger and Lester Pailet of a right-of-way in an act filed for public record in COB 110, folio 459 and dated June 4, 1943.

ff.   Transfer by Mrs. Marceline Barrios Bayhi of a right-of-way in an act filed for public record in COB 110, folio 470 and dated May 4, 1943.

gg.   Transfer by Mrs. J. O. Barrios of a right-of-way in an act filed for public record in COB 117, folio 250 and dated December 15, 1945.

hh.   Transfer by O. L. Barrios of a right-of-way in an act filed for public record in COB 129, folio 110 and dated May 3, 1947.

ii.   Transfer by William M. Bayhi, Sr. of a right-of-way in an act filed for public record in COB 138, folio 544 and dated February 8, 1949.

jj.   Transfer by Amalie Sanders, Jr. of a right-of-way in an act filed for public record in COB 145, folio 414 and dated June 3, 1950.

24.   In or about June of 1999, Defendant, through its predecessor in interest Creole Gas Pipeline Corporation, filed with the state of Louisiana, Office of Conservation, an *Application for Authority to Interconnect the Natural Gas Pipeline Facilities of Creole Gas Pipeline Corporation with an Interstate Pipeline and to Receive Section 311(a)(1) Transportation Through Such Proposed Interconnect*.

25.   This matter was assigned Docket No. PL 99-029 by the Office of Conservation under the reference *Creole Gas Pipeline Corporation*, and titled *Construct and Operate Intrastate*

*Natural Gas Pipeline Facilities (Chevron-Gloria 6-inch Pipeline Facilities) in Plaquemines Parish, State of Louisiana* and stated: "Application for authority to construct and operate intrastate natural gas pipeline facilities (Chevron-Gloria 6-Inch Pipeline Facilities) consisting of approximately 6.90 miles of 6-inch diameter natural gas pipeline beginning at a point located in Section 19, Township 15 South, Range 24 East, Plaquemines Parish and extending in a northerly direction to a terminus located in Section 2, Township 15 South, Range 24 East, Plaquemines Parish, State of Louisiana."

26.     A matter closely associated to this filing was assigned Docket No. PL 99-030 by the Office of Conservation under the reference *Creole Gas Pipeline Corporation* and titled *Interconnect With The Interstate Natural Gas Pipeline System of Koch Gateway Pipeline Company In Plaquemines Parish, State of Louisiana* and stated: "Application for authority to interconnect the intrastate natural gas pipeline system of CREOLE GAS PIPELINE CORPORATION with the interstate natural pipeline system of Koch Gateway Pipeline Company located in Section 19, Township 15 South, Range 24 East, Plaquemines Parish, State of Louisiana*."*

27.     The PIPELINE above referenced and owned by Defendant was constructed upon and traverses approximately 5.63 miles of Plaintiff's immovable property.

28.     Upon understanding that the PIPELINE would traverse its immovable property, Plaintiff directed a Cease and Desist letter to Defendant's predecessor in interest, Creole Gas Pipeline Corporation.

29.     In this August 24, 1999 Cease and Desist letter, Plaintiff advised Defendant's predecessor in interest that the construction of the PIPELINE was being made through and across

immovable property owned by Plaintiff, that Defendant's predecessor in interest did not obtain a right-of-way/servitude to construct the PIPELINE through and across Plaintiff's property, and that Defendant's predecessor in interest was to cease and desist from constructing the PIPELINE.

30.  Creole Gas Pipeline Corporation abandoned its above referenced application in Docket No. PL 99-029 and submitted a new application later that year, which application was assigned Docket No. PL 99-052.

31.  The September 16, 1999 docket summary for the Office of Conservation - Pipeline Division states that as to Creole Gas Pipeline Corporation, Docket No. PL 99-052, this is an "Application for authority to construct and operate natural gas pipeline facilities (CHEVRON-GLORIA 6-INCH Facilities) consisting of approximately 6.9 miles of 6-inch diameter pipeline beginning in Section 19, Township 15 South, Range 24 East, Plaquemines Parish and proceeding in a generally north direction to a point located in Section 2, Township 15 South, Range 24 East, Plaquemines Parish, State of Louisiana.  Additionally, **CREOLE GAS PIPELINE CORPORATION** requests that PL Order 5196 granting prior approval for the project in Docket No. PL 99-029 be rescinded."  (*Emphasis in text*.)

32.  Thereafter, Plaintiff and Defendant's predecessor in interest entered into a *Longitudinal Pipeline Encroachment Agreement* ("AGREEMENT") dated December 6, 1999.

33.  Defendant's predecessor in interest paid a license fee of $250,000.00 to Plaintiff  "to construct and thereafter, during the term hereof, to maintain and operate **a six inch (6")  natural gas transmission pipeline for approximately 6.64 miles** (hereinafter collectively

the Pipeline) beginning at a crossing 4,595 feet south of Railroad Mile Post No. 17, running parallel north along western side of track to a point 3,979 feet north of Railroad Mile Post 12 to a second point of crossing; total length parallel to tracks is 35,091 feet with a combined crossing length of 86 feet; and, in the location shown and in conformity with the dimensions and specifications...." (*Underlined emphasis added.  Bold emphasis in text*.)

34.     The term of the AGREEMENT was for fifteen (15) years commencing on December 6, 1999 with an option at the end of each fifteen year period to extend the license for an additional fifteen (15) year period.

35.     With the impending December 6, 2014 termination date of the AGREEMENT, Plaintiff contacted Defendant on October 14, 2014 and provided a renewal agreement to Defendant.

36.     Negotiations between Plaintiff and Defendant were conducted until the evening of December 5, 2014.

37.     From October 14, 2014 through December 5, 2014 there were e-mails between Plaintiff's representatives and Defendant's representatives concerning specific terms for renewal of the AGREEMENT.  As non-exclusive examples:

a)      On October 14, 2014 Plaintiff's representative (Mr. Haeg) forwarded to Defendant's representative (Ms. Trauernicht) a copy of the AGREEMENT for review and discussion for purposes of negotiating a renewal of the AGREEMENT.   Plaintiff's representative (Mr. Haeg) also forwarded maps of the railway line to Defendant's representative (Ms. Trauernicht).

b)      On October 20, 2014 Defendant's representative (Ms. Trauernicht) advised

Plaintiff's representative (Michael Haeg): "I received the maps, scanned them, and am now double checking with our field guys.  I'm hoping to get back to you soon."

c)    Later in the day on October 20, 2014 Defendant's representative (Ms. Trauernicht) communicated to Plaintiff's representative (Mr. Haeg): "We have reviewed the lines and agree the 15 year term needs to be renewed for an additional 15 years.  Can you please send me your version of the encroachment [AGREEMENT] renewal?"

d)    On October 23, 2014, Defendant's representative (Ms. Trauernicht) spoke with Plaintiff's representative (Mr. Haeg) negotiating a price for renewal of the AGREEMENT.   Plaintiff's representative (Mr. Haeg) confirmed the terms of this conversation in a later October 23, 2014 e-mail, stating: "We believe the price per foot price should be $2.00.  This comes from comps that we see that range for a six inch hazardous pipeline that range from $2.00 per foot to $7.00 per foot that are subject to change at any time.  In any event, 6.64 miles X $2 X 5280 feet = $70,118 in year 1.  We input a relatively minor 2% increase for the 15 year period on a compounded basis that would equal $1,212,597.  However, we did discount that on a NPV basis of 3% for an up-front payment of $954,580 for the 15 year period.  We would further discount the price above by 1% if funds are delivered electronically/ACH and received by us no later than Dec 8, 2014.  Additionally, as I mentioned, the insurance would have to be raised from $2/4 million to $3/6 million. Lastly, there would be a one time document fee of $500.  Please let me know if there are any further questions."

    e)      By e-mail of October 31, 2014, Defendant's representative (Ms. Trauernicht) confirmed that Plaintiff's representative's (Mr. Haeg's) October 31, 2014 e-mail (*supra*) was an exact summary as to their conversation on October 23, 2014.

38.    Defendant did not raise an issue as to Plaintiff's ownership interest in the immovable property through which the PIPELINE was constructed, and is presently operated and maintained until the day before the expiration of the AGREEMENT.

39.    In a December 5, 2014 e-mail, Kyle Allen, Esq. (Defendant's representative) informed Plaintiff that Defendant would not renew the AGREEMENT stating; "We have researched the issue further and we believe our pipeline does not reside in the railway's property.  The original agreement was entered into to provide our predecessor necessary space for <u>construction</u>.  We no longer require such space and are therefore comfortable letting the agreement expire.  Thank you for your attention to this matter." (*Emphasis added*)

40.    Plaintiff  requested on more than one occasion a copy of the documentation upon which Defendant relied to support its conclusion.  However, Defendant refused to provide such information.

41.    On December 6, 2014, the initial fifteen (15) year term of the AGREEMENT expired, as well as Plaintiff's former consent to allow Defendant to locate, operate, and maintain the PIPELINE on Plaintiff's property.

42.    There is no agreement to allow Defendant to locate, operate, and maintain its PIPELINE past December 6, 2014 in and across Plaintiff's immovable property.  Yet, Defendant continues to do so <u>without</u> Plaintiff's consent and authorization.

43.     As of December 6, 2014, Defendant has no right to have its PIPELINE located upon
        Plaintiff's immovable property, and Defendant has no right to operate and maintain its
        PIPELINE upon Plaintiff's immovable property.

44.     The amounts owed to Plaintiff by Defendant exceed the jurisdictional threshold for a jury
        trial.


**<u>Relief Sought</u>**

**WHEREFORE**, Plaintiff prays that after due proceedings are had, there be judgment in

favor of the Plaintiff New Orleans & Gulf Coast Railway Company and against the Defendant

American Midstream (Louisiana Intrastate), L.L.C.  for an amount sufficient to satisfy the damages

caused by Defendant to Plaintiff for Defendant's use of Plaintiff's immovable property without

Plaintiff's consent and authorization since December 6, 2014, said damages including but not limited

to the rental/lease value thereof.

In the alternative and in addition to the awarding of damages not limited to those for which

Plaintiff above prays, Plaintiff prays that there be judgment against the Defendant American

Midstream (Louisiana Intrastate), L.L.C. and its successors in interest ordering an immediate

cessation of operation of the PIPELINE, removal of the PIPELINE, and a return of the Plaintiff's

immovable property to the state and condition it was found immediately prior to the beginning of

construction of the PIPELINE, with all costs to be paid by Defendant American Midstream

(Louisiana Intrastate), L.L.C. and its successors in interest.

Plaintiff further prays that there be judgment in favor of the Plaintiff New Orleans & Gulf

Coast Railway Company and against the Defendant American Midstream (Louisiana Intrastate), L.L.C. for any and all relief due to Plaintiff as proven at the trial of this matter.

Plaintiff further prays that it be awarded judicial interest on all amounts awarded to it by this court against the Defendant from the date of judicial demand.

Plaintiff further prays that this court order the Defendant to pay all of the Plaintiff's costs and attorney's fees, with judicial interest accruing thereon from date of judicial demand.

Respectfully submitted,

/s/ Adrian F. LaPeyronnie, III

_____

David Greenberg, LSBN 6303 (Trial Attorney)
Adrian F. LaPeyronnie, III, LSBN 14118
GREENBERG & LAPEYRONNIE, L.L.C.
848 Second St, Ste 200
Gretna, Louisiana 70053
Telephone:   504-366-8118
Facsimile:    504-368-9711
dgreenberg@GLNolaLaw.com
alapeyronnie@GLNolaLaw.com

Attorneys for New Orleans & Gulf Coast Railway Company, Plaintiff